C. Renée Manes
Assistant Federal Public Defender
Email: Renee_Manes@fd.org
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:21-cr-00492-RDM |
| Plaintiff, | |
| v. | **DEFENDANT'S PARTIAL OPPOSITION TO APPLICATION FOR ACCESS TO VIDEO EXHIBITS** |
| **JEREMY GRACE**, | |
| Defendant. | |

## I. INTRODUCTION

Counsel for Mr. Jeremy Grace have been provided a courtesy copy of an Application to Access Video Exhibits. That application does not yet appear to be of record in this matter, nevertheless counsel for Mr. Grace files the following partial opposition.

Mr. Grace does not object to provision of Exhibit H, the video of his conduct while in the Capital, to the media. This is the type of video intended to be made public by Standing Order 21-28 (BAH), as it involves conduct in the Capital on January 6, 2021, that is the subject of this matter. Mr. Grace does object to releasing Exhibit G, the video of his family members and work associates, based on his standing as the parent of the minor children, for the reasons discussed herein.

## II. APPLICABLE LAW

**A. The Basis Of Standing Order 21-28 (BAH): Access To Videos Of The Activities On January 6, 2021, Used In Pretrial Proceedings.**

On May 3, 2021, a coalition of news organizations (hereinafter "Coalition") petitioned the United States District Court for the District of Columbia regarding their concerns on "the near-total lack of access to videos of the riot that have been introduced in" cases involving the events of January 6, 2021. *See In Re: Press and Public Access to Video Exhibits in the Capital Riot Cases*, Case No. 1:21-mc-00046-BH, Clerk's Record entry 1, at page 1. The focus of the letter noted the extensive use of such videos in pretrial hearings, usually on issues of detention. *Id.* at page 2 (general statement) & pages 3-6 (summarizing cases where such evidence was presented during detention hearings).

The Coalition's ability to view the video exhibits was limited by the fact that most of these proceedings were conducted remotely, or partially remotely, due to the Covid-19 pandemic. *See, e.g., In Re Modified Restrictions on Access to Courthouse During the Covid-19 Pandemic*, Standing Order No. 21-20 (BAH) (April 2, 2021); *In Re Fourth Extension of Authorization for Use of Video Teleconferencing and Teleconferencing for Certain Criminal and Juvenile Delinquency Proceedings*, Standing Order No. 21-14 (BAH) (March 16, 2021). Thus, while members of the Coalition could often hear the arguments and the description of the video content during court proceedings, due to remote and/or video nature of the proceedings, they were usually unable to view the exhibits for themselves as they were shown in court.

Ultimately, the Standing Order issued allowed the Coalition to access "**pretrial proceedings** in Capital Cases, and video exhibits used therein that are not under seal[.]" Standing Order No. 21-28

(BAH), at page 4 [emphasis added]. If the Coalition seeks any other video material, it is required to submit that request to "the presiding judge in the case" who "may seek the position of the parties" before ruling thereon. *Id.* at page 5, ¶ 4. In addition, the Standing Order specifically states that these other videos may not be copied, downloaded or retransmitted any further unless the court specifically authorizes such activity, and again that the court may wish to hear from the parties prior to granting such authorization. *Id.* at page 6, ¶ 4.

**B. The Necessity To Consider All Relevant Information At Sentencing.**

In determining an appropriate sentence, a court is required to consider virtually all available information about the individual defendant. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. It is only after receiving as much information as possible that a court may adequately evaluate the factors set forth in 18 U.S.C. § 3553(a) and determine an appropriate sentence, as required by *Kimbrough v. United States,* 552 U.S. 85, 101 (2007).

The Supreme Court has long affirmed a sentencing court's need to obtain a broad range of information regarding an individual and their conduct. *See, e.g., Wasman v. United States*, 468 U.S. 559, 564 (1984) (permitting sentencing courts to the widest possible breadth of information about an individual "ensures that the punishment will suit not merely the offense but the individual defendant"); *Koon v. United States,* 518 U.S. 81, 113 (1996) ("[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *United States v. Watts*, 519 U.S. 148,

151 (1997) (*per curiam*) (discussing Congress's initial codification of the "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" in 18 U.S.C. § 3577 (1970 ed.), now 18 U.S.C. § 3661); and, *Pepper v. United States,* 562 U.S. 476, 487-491 (2011) (summarizing decisions and holding that a district court may consider intervening facts, including rehabilitation, on any resentencing).

The information that a court can and should consider is often presented in non-public filings, such as a Pre-Sentence Report (PSR). The PSR is required by 18 U.S.C. § 3552, Federal Rule of Criminal Procedure 32, and U.S.S.G. § 6A1.1. Often individuals interview with the drafter of the PSR to provide information, which that individual hopes may influence the court in determining an appropriate sentence. Nevertheless, that document remains a sealed court document. *See, e.g., United States v. Corbitt*, 879 F.2d 224, 229 (7th Cir. 1989) (discussing what was then a 25 year history of confidentiality of presentence reports); *United States v. Charmer Indus.,* 711 F.2d 1164, 1171 (2d Cir.1983) ("Presentence reports are not public records but rather confidential reports to the trial judge for use in his effort to arrive at a fair sentence") *and* at 1175 ("the district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice").

### III.  ARGUMENT

**A. The Request For Presentation Of Any Video Within 72 Hours Of The Filing Of The Coalition Is Not Supported By The Standing Order.**

The Coalition's demand that the video exhibits be released by the government within 72 hours is not supported by Standing Order 21-28.

The video exhibits at issue are not pretrial exhibits, and are therefore covered by ¶ 4 of the Standing Order. Under those provisions, the Coalition must petition this Court, and this Court should inquire regarding the position of the parties before granting the Coalition either access to the video or the ability to further transmit or publish that material.

Given that this is the Coalition's prayer for relief, that request should be denied.

**B.  Non-Opposition To Release Of Exhibit H.**

Mr. Grace submitted Exhibit H, a recording of his conduct in the Capital on January 6, 2021, taken from the discovery provided to by the government.

Mr. Grace does not object to releasing this information to the Coalition, or even allowing the Coalition to further transmit this video. This is the type of video sought by the Coalition in its letter to the Presiding Judge, and the type of video that is legitimately of interest to the public.

**C.  Opposition To Release Of Exhibit G, Containing The Images Of Family And Friends, Including Minor Children.**

Exhibit G is a video of statements from Mr. Grace's family and friends, including his two minor children.  Mr. Grace objects to the release of this video, and in particular to any further dissemination thereof.

This is not the type of material sought by the Coalition in its original proceeding, and does not involve any behavior at the Capital on January 6, 2022, nor any behavior which may be deemed criminal in nature. Nothing in the record of *In Re: Press and Public Access to Video Exhibits in the Capital Riot Cases*, Case No. 1:21-mc-00046-BH, leading to the issuance of Standing Order 21-28, discussed or analyzed access to sentencing material of this nature. Nothing in the Standing Order suggested that release of this type of information was anticipated by that Order.

Instead, this is the type of background information necessary for this Court to obtain a true and accurate idea of who Mr. Grace is as a person, and in particular as a father, in order to evaluate him as an individual and arrive at an appropriate sentence in this matter. The presentation of this information in a video format has become more common, as it can effectively take the place of in-person testimony at sentencing hearings at a time when that testimony has been limited by the various pandemic protocols.[1]

Mr. Grace does not dispute that the Coalition and the public have a right to know about his background, particularly as such information has impacted this Court's sentencing determination. All of the information that the Coalition needs to know on these issues is available both in the written presentation submitted on Mr. Grace's behalf and was discussed at this Court's public sentencing proceeding. The press has produced a number of reports based on that material.[2] The

---

[1] Such in-person testimony would not be the subject of recording, of course.

[2] *See, e.g.,* the following articles and video:

https://www.msn.com/en-us/news/us/capitol-riot-suspect-from-southwest-washington-sentenced-to-21-days-in-prison/ar-AAZmUQj

https://www.usnews.com/news/best-states/washington-dc/articles/2022-07-08/washington-man-at-capitol-riot-sentenced-to-21-days-prison

https://www.msn.com/en-us/news/other/how-some-jan-6-defendants-are-now-seeking-to-profit-from-their-roles-in-the-us-capitol-siege/ar-AA10Hqmc

https://www.seattletimes.com/seattle-news/wa-man-at-capitol-riot-sentenced-to-21-days-in-prison/

https://www.oregonlive.com/clark-county/2022/07/battle-ground-man-sentenced-to-to-21-days-prison-for-role-in-capitol-riot.html

https://www.sfgate.com/news/article/Washington-man-at-Capitol-riot-sentenced-to-21-17293554.php

coverage comes from national news sources (MSN and US News, including utilizing the Associated Press); large-market media on the West Coast (the Seattle Times; the Oregonian; the San Francisco Gate; the Los Angeles Times); smaller local news papers (the Columbian); virtually every local news station (KATU, KGW; KOIN; KOMO); smaller directed media outlets (Insurrection Index and Law and Crime); and, video reports have appeared on youtube where they have generated the anticipated commentary. Those articles and reports: quote the government's sentencing materials, including the contested allegation that Mr. Grace attempted to profit from his conduct; show pictures provided by the government; quote Mr. Grace's sentencing presentation, including his letters of support and his

---

https://www.latimes.com/world-nation/story/2022-08-14/some-capitol-rioters-try-to-profit-from-their-jan-6-crimes

https://www.columbian.com/news/2022/jul/08/oregon-man-at-capitol-riot-sentenced-to-21-days-prison/

https://katu.com/news/local/oregon-man-molalla-jeremy-grace-sentenced-to-21-days-in-jail-for-role-in-jan-january-6-capitol-attack-plea-deal-entering-remaining-in-restricted-building-grounds
https://www.columbian.com/news/2022/jul/08/oregon-man-at-capitol-riot-sentenced-to-21-days-prison/

https://www.kgw.com/article/news/investigations/capitol-riot-suspect-southwest-washington-sentenced-21-days-prison/283-e81331cf-e9f1-466e-8fe3-717595032aa5

https://www.koin.com/news/crime/washington-man-at-capitol-riot-sentenced-to-21-days-prison/

https://komonews.com/news/local/washington-state-man-at-jan-6-riot-at-us-capitol-sentenced-to-21-days-prison

https://insurrectionindex.org/records/person/jeremy-grace/

https://lawandcrime.com/u-s-capitol-breach/washington-state-man-with-links-to-proud-boys-gets-three-weeks-behind-bars-for-jan-6-capitol-riot/

https://www.youtube.com/watch?v=jaRPkNMm_ho

Page 7                                                                                                    DEFENDANT'S PARTIAL OPPOSITION TO
                                                                                                              APPLICATION FOR ACCESS TO VIDEO EXHIBITS

own letter; relay both government and defense arguments presented at the time of sentencing; and, quote this Court in its determination of the merits of those arguments.

Mr. Grace's two minor children and the other non-party witnesses have been willing to have their written statements presented to the public, and members of the Coalition have been able to fully cover the issues raised and presented in Mr. Grace's plea and sentencing based on that written presentation. There is no legitimate need for the Coalition to access the video images of the two minor children and other family members, or Mr. Grace's co-worker, much less to publish those images. All that such access and publication would accomplish is to potentially subject these children and other individuals to criticism, disapprobation, or even possible physical dangers from individuals who may be angry at their father and his conduct.[3] Further, allowing the Coalition access to this video would chill the willingness of individuals to submit such presentations to their sentencing courts – both chilling the willingness of a defendant to present their family and friends in a video, and the willingness of family and friends to participate in these efforts. This in turn would deprive the courts of information that all of the legal authorities confirm is critical for determining a just and appropriate resolution in criminal cases.

The Coalition has not articulated a legitimate need for the sentencing video, and the briefing in support of Standing Order 21-28 does not provide that basis. The press is often not granted access to the full panoply of sentencing information, and this video is the type of information that should be withheld from the press, and certainly should be precluded from any further publication.

---

[3] Child witnesses have historically been entitled to additional protections during their participation in court processes.  *See, e.g.,* 18 U.S.C. § 3509.

## VI. CONCLUSION

For the reasons presented herein, Mr. Grace does not object to provision of Exhibit H, the video of his conduct while in the Capital, to the Coalition. Mr. Grace does object to releasing Exhibit G, the video of his family members and work associates, based on his standing as the parent of the minor children. The Coalition's request for access to this Exhibit, and certainly for the right to further disseminate that material, should be denied.

Respectfully submitted, this 31st day of August, 2022.

                                                   */s/ C. Renée Manes*
                                                  C. Renée Manes
                                                  Attorney for Defendant